UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CIVIL ACTION NO. 1:18-cv-880 (WOB-SKB)

CAITLIN DEANE,                                                    PLAINTIFF

V.

QUEST DIAGNOSTICS, LLC,          DEFENDANT/THIRD-PARTY PLAINTIFF

V.

MICHAEL A. THOMAS, M.D., ET AL,          THIRD-PARTY DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This is a medical negligence case by Caitlin Deane ("Caitlin") against Quest Diagnostics, LLC's ("Quest") for its alleged delay in diagnosing and treating her cervical cancer. (Doc. 14 at ¶¶ 13-14). During discovery, Quest learned that Caitlin participated in a long-term contraceptive clinical trial and research study ("IUS Study") at the University of Cincinnati. (Doc. 31). Quest filed a third-party complaint against Michael A. Thomas, M.D. ("Dr. Thomas"); Deborah A. Boerschig, R.N., C.N.P. ("Nurse Boerschig"); University of Cincinnati Physicians Company, LLC ("UCPC"); University of Cincinnati Medical Center, LLC ("UCMC"); and UC Health, LLC ("UCH") (collectively "Third-Party Defendants"), asserting Ohio law claims of (1) indemnity and (2) contribution.

This matter is before the Court on the Third-Party Defendants' motion to dismiss Quest's third-party complaint

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 48). Quest filed a response to the motion to dismiss, and the Third-Party Defendants subsequently filed a reply. (Docs. 58, 63). Upon determination that oral argument was unnecessary in this matter, the Court took the motion under advisement. For the reasons stated below, the Court grants the Third-Party Defendants' motion to dismiss.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The underlying civil action alleges professional negligence by cytotechnologists employed by Quest after Caitlin's cervical cancer went undiagnosed from 2012 until April 2018. (Doc. 14 at 3-4). Caitlin's negligence claim cites two negative reports for malignancy from Pap smears dated May 14, 2012 and June 1, 2015, that she avers would have revealed cervical cancer had the cytotechnologists properly interpreted them. (*Id.* at ¶ 17).

Caitlin filed her original complaint on November 12, 2018, in the Hamilton County Court of Common Pleas against Quest Diagnostics Incorporated and John Doe defendants. (Doc. 1-1). Quest Diagnostics Incorporated removed this action from state court to federal court and filed its answer. (Docs. 1, 9). Caitlin filed her amended complaint, substituting Quest Diagnostic Incorporated with Quest Diagnostics, LLC as the

proper Quest corporate entity.[1] (Doc. 14). The amended complaint made no claims against Third-Party Defendants. Quest filed its answer on July 26, 2019. (Doc. 24).

During discovery, Quest learned that Caitlin participated in an IUS Study at the University of Cincinnati by the Third-Party Defendants. (Doc 31 at ¶ 22). Quest then filed a third-party complaint against the Third-Party Defendants, alleging they were "the substantial contributing factor" in failing to discover Caitlin's cancer. (*Id.* at ¶ 29). Quest alleges that the 2012 and 2015 Pap smear results were also collected by the Third-Party Defendants. (*Id.* at ¶¶ 23-24). Quest avers that should it be held liable, it is entitled to contribution from the Third-Party Defendants for their proportionate fault and indemnity for its costs, attorney fees, and other relief incurred in connection with this matter. (*Id.* at ¶¶ 30-33).

## II. ANALYSIS

In order to survive Defendants' Rule 12(b)(6) motions to dismiss, Quest's third-party complaint must contain "enough facts to state [claims] to relief that [are] plausible on [their] face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must construe the third-party complaint in the light most favorable to Quest and accept all factual allegations

---

[1] Caitlin also dismissed the John/Jane Doe defendants and added her parents as plaintiffs. (Doc. 14 at ¶¶ 2-3). Counts II and III of Caitlin's amended complaint, alleging loss of consortium by her parents, were dismissed with prejudice. (Doc. 17).

as true. *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011). If the complaint contains "either direct or inferential allegations" to establish each material element required for recovery under an actionable legal theory, then it survives a motion to dismiss. *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).

**A.**   **Lack Of Subject Matter Jurisdiction Over Dr. Thomas And Nurse Boerschig**

The Third-Party Defendants seek dismissal of the state law claims against Dr. Thomas and Nurse Boerschig in Quest's third-party complaint, arguing the Court lacks subject matter jurisdiction to determine whether they are immune under Ohio Revised Statute § 9.86. (Doc. 48 at 5). They argue that Ohio Revised Code § 2743.02(A)(3)(F) vests "exclusive, original jurisdiction" with the Ohio Court of Claims to make this initial determination of whether Dr. Thomas and Nurse Boerschig are immune under Ohio Revised Statute § 9.86. (*Id.* at 6). Because the Third-Party Defendants have presented prima facie evidence to show Dr. Thomas and Nurse Boerschig are employees of the state, the Ohio Court of Claims must make the initial determination of jurisdiction and immunity.

The issue of immunity under the Eleventh Amendment raises a question of federal jurisdiction. *Johnson v. University of Cincinnati*, 215 F.3d 561, 570-71 (6th Cir. 2000). The Eleventh

4

Amendment provides immunity for states, arms of the state, and state employees in their official capacities from suits for money damages. *Rogers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003). It also expressly prohibits citizens from suing states in federal court, subject to some exceptions. U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State"). The Supreme Court has interpreted the Eleventh Amendment to mean that plaintiffs may directly sue a state in federal court when a state consents to suit or the case concerns a statute passed under Section 5 of the Fourteenth Amendment to the United States Constitution. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996); *Alden v. Maine*, 527 U.S. 706 (1999). This case involves the former.

While Ohio has consented to being sued in Ohio's court of claims, it has not consented to state law actions against the State of Ohio and its officials outside of its own court. *Jones v. Hamilton Cty. Sheriff*, 838 F.3d 782, 786 (6th Cir. 2016). Ohio Revised Code § 9.86 provides:

> [N]o *officer or employee* shall be liable in any civil action that arises under the law of this state for damages or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or

> official responsibilities, or unless the officer or
> employee acted with malicious purpose, in bad faith,
> or in a wanton or reckless manner.

(Emphasis added). Ohio Revised Code § 2743.02(A)(3)(F) mandates, however, that lawsuits seeking damages against state employees "shall *first* be filed against the state in the court of claims that has *exclusive, original jurisdiction* to determine, *initially*, whether the officer or employee is entitled to personal immunity under section 9.86, of the Revised Code *and* whether the courts of common pleas have jurisdiction over the civil action." (Emphasis added). In other words, "Ohio law requires that, as a condition precedent to asserting a cause of action against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to the immunity provided for in Revised Code section 9.86." *Otte v. Kasich*, 709 F. App'x 779, 784 (6th Cir. 2017) (internal quotations omitted).

Under Ohio Revised Code § 109.36(A)(1)(b), a "person that, at the time a cause of action against the person . . . arises, is rendering medical [or] nursing . . . services pursuant to a personal services contract or purchased service contract with a department, agency, or institution of the state" is an "employee." The crux of the dispute hinges on whether there is evidence to determine that Dr. Thomas and Nurse Boerschig are employees of Ohio to prompt a jurisdictional issue.

Quest argues that the Third-Party Defendants did not provide evidence for their conclusion that Dr. Thomas and Nurse Boerschig are employed by the University of Cincinnati and discovery is needed on this issue. (Doc. 58 at 6). The Third-Party Defendants argue the University of Cincinnati's website establishes Dr. Thomas and Nurse Boerschig's employment, which they say the Court can take judicial notice of. (Doc. 63).

The University of Cincinnati College of Medicine's website provides that Dr. Thomas is the "Director of OB/GYN Reproductive Endocrinology & Infertility at the UC College of Medicine" and researches intrauterine devices.[2] (*Id.* at 3-4). The University of Cincinnati's directory identifies Nurse Boerschig as a University of Cincinnati Practitioner.[3] (*Id.* at 4).

Even without this website, Quest's pleading explicitly acknowledges Dr. Thomas' dual employment as the "Chief of the Division of Reproduction Endocrinology and Infertility at the University of Cincinnati College of Medicine" and "Director of Reproductive Medicine Research at University of Cincinnati", in conjunction with his employment with UCPC, UCMC, and UCH. (Doc. 31 at ¶¶ 3, 25). Although Quest's concern about the capacity in which Dr. Thomas was performing his duties is well-taken, Ohio Revised Code § 2743.02(A)(3)(F) sets a clear condition precedent

---

[2]https://www.med.uc.edu/microsites/indispensable/more-stories/michael-thomas-md-uc-college-of-medicine
[3]https://ucdirectory.uc.edu/FacultyStaffSearch.asp?mode=SearchFS&ID={00380039-0044-0034-4200-310044003000}

for the Ohio Court of Claims having exclusive, original jurisdiction to determine initially "whether the officer or employee is entitled to personal immunity under section 9.86" and "whether the courts of common pleas have jurisdiction over the civil action." Thus, because the Third-Party Defendants' motion presents prima facie evidence that Dr. Thomas is an employee of a public and private entity, it is for the Ohio Court of Claims to make the initial determination of immunity and whether it has jurisdiction over the civil action. *See e.g., Randolph v. Holzer Medical Center*, 2010 WL 2521424, at *2 (S.D. Ohio June 22, 2010) (dismissing a defendant without prejudice because the defendant made a prima facie showing that he was an employee of the State of Ohio when he consulted with the plaintiff as a volunteer professor of medicine at the University of Cincinnati). Therefore, this Court lacks jurisdiction over Dr. Thomas. *Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 1989) ("Until the Ohio Court of Claims determines that they are not immune, there is no cause of action cognizable under Ohio law over which the district court can assert pendent jurisdiction.").

Nurse Boerschig's employment status with the University of Cincinnati is silent in Quest's pleadings. Nevertheless, "[a] court ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records

or are otherwise appropriate for the taking of judicial notice." *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003). Federal Rule of Evidence 201 permits a court to take judicial notice of facts that are not subject to reasonable dispute in that they are either generally known within the territorial jurisdiction of the trial court or capable of accurate and ready determination by resort to resources whose accuracy cannot be reasonably questioned. This means public records and government documents are "not to be subject to reasonable dispute." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999). "This includes public records and government documents available from reliable sources on the Internet." *Total Benefits Planning Agency Inc. v. Anthem Blue Cross & Blue Shield*, 630 F.Supp.2d 842, 849 (S.D. Ohio July 25, 2007), aff'd 552 F.3d 430 (6th Cir. 2008).

Here, the University of Cincinnati's website sufficiently establishes Nurse Boerschig's employment with the University. This argument is bolstered by Quest's admission that the IUS Study with Caitlin was conducted at the University of Cincinnati. (Doc. 31 at ¶ 22). Therefore, like Dr. Thomas, the Third-Party Defendants make their prima facie case showing that Nurse Boerschig was an employee of the State of Ohio and it is for the Ohio Court of Claims to make the initial determination of jurisdiction and immunity.

Moreover, when subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction to survive the motion. *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986). Although Quest argues that Nurse Boerschig was not performing her duties in her capacity as a state employee, Ohio law vests this initial determination to its court of claims. O.R.C. § 2743.02(A)(3)(F). Quest does not show how this condition precedent is inapplicable in this circumstance.

In sum, since this Court lacks subject-matter jurisdiction to hear Quest's state law claims against Dr. Thomas and Nurse Boerschig, Quest's claims are dismissed without prejudice.

**B.** **State Law Claims Against Remaining Third-Party Defendants Are Dismissed, And Quest's Alternative Request to Amend its Third-Party Complaint Is Denied**

The remaining question is whether Quest's indemnity and contribution claims against UCPC, UCMC, and UCH may persist in light of alleged deficiencies to make a plausible assertion for both state law claims, pursuant to Rule 12(b)(6).

**1. Indemnification**

First, Quest's third-party complaint seeks indemnification from the Third-Party Defendants should any liability be attributed to it. (Doc. 31 at ¶¶ 32-33). Under Ohio law, indemnification obligations arise "from contract, either express or implied, and is the right of a person who has been compelled

10

to pay what another should have paid to require complete reimbursement." *Worth v. Aetna Cas. & Sur. Co.*, 513 N.E.2d 253, 256 (Ohio 1987). Quest argues the facts support an inference for an implied contract of indemnity. (Doc. 58 at 11).

"An implied contract of indemnity should be recognized in situations involving related tortfeasors, where the one committing the wrong is so related to the second party as to make the second party liable for the wrongs committed solely by the other." *Reynolds v. Physicians Ins. Co. of Ohio*, 623 N.E.2d 30, 31 (Ohio 1993) (citation omitted). Ohio recognizes this relationship with wholesaler/retailers, abutting property owner/municipality, independent contractor/employer, and master/servant. *Id.* (Citation omitted). "Indemnification is not allowed when the two parties are joint or concurrent tortfeasors and are both chargeable with actual negligence." *Id.* at 31-32 (citation omitted).

Quest argues it "alleged a relationship with the Third-Party Defendants of the type required for an implied contract of indemnity . . . akin to that of an independent contractor/employer or master/servant relationship." (*Id.* at 12). The Third-Party Defendants argue Quest's conclusion does not describe how their relationship is analogous to an independent contractor/employer or a master/servant and fails to

appreciate that it named two individuals and three entities as third-party defendants. (Doc. 63 at 8).

Quest's allegations do not directly or inferably show how their relationship is analogous to an independent contractor/employer or a master/servant. Quest's third-party complaint avers that Caitlin and the Third-Party Defendants participated in the IUS Study between 2012 and 2018, wherein the Dr. Thomas and Nurse Boerschig collected the Pap smear results in the course and scope of their employment for UCPC, UCMC, and UCH. (Doc. 31 at ¶¶ 22-27). Quest contends that these facts clearly show that Quest performed testing on the Pap smear results in conjunction with the IUS Study performed by the Third-Party Defendants. (Doc. 58 at 11).

At best, these facts show that Quest and the Third-Party Defendants were performing distinct and separate duties for Caitlin. *See Reynolds*, 623 N.E.2d at 32 (holding there was no implied contract of indemnity because the third-party plaintiff's complaint failed to establish a relationship between the obstetrician responsible for delivering the plaintiff and the pediatrician responsible for the plaintiff's care after he was born). Like *Reynolds*, the facts show a disconnect in the care Caitlin received from Quest (responsible for the laboratory services and interpretation of Caitlin's Pap smear slides) and the Third-Party Defendants (responsible for a separate IUS Study

when they reviewed the slides). The fact that the Third-Party Defendants collected the Pap smear results that were eventually evaluated by Quest's employees does not directly or inferably show that Quest hired them in some capacity to collect the Pap smear results for it to interpret. Practically, it is also unclear how an independent contractor/employer relationship or master/servant relationship is the proper analogy when Quest did not learn of the Third-Party Defendants' collecting the same Pap smear results until a year into this litigation. Therefore, Quest fails to plead facially plausible facts to entitle it to indemnification from the Third-Party Defendants.

### 2. Contribution

Second, Quest also seeks contribution from the Third-Party Defendants. (Doc. 31 at ¶¶ 30-31). The Third-Party Defendants argue that Quest failed to plead the threshold requirement of Ohio's contribution statute that it was jointly and severally liable with the Third-Party Defendants and that Quest had paid more than its proportionate share of liability. (Doc. 48 at 9-10). Quest concedes that it does not specifically allege it is jointly and severally liable but argues that its third-party complaint effectively alleges this requirement, when considered as a whole. (Doc. 58 at 13).

Ohio's contribution statute provides "if one or more persons are jointly and severally liable in tort for the same

13

injury . . . there may be a right of contribution even though judgment has not been recovered against all or any of them." Ohio Rev. Code Ann. § 2307.25(A).

Again, Quest argues that the Third-Party Defendants were negligent when they too did not detect Caitlin's cancer. (Doc. 31 at ¶ 28). Paragraph 29 of the third-party complaint states that the Third-Party Defendants "were the substantial contributing factor, in whole or in part, of the Plaintiff's alleged injuries and damages." This paragraph also lists fifteen ways the Third-Party Defendants were negligent, all of which concern their failure to detect and diagnose the cancer during IUS Study. (*Id.* at ¶ 29). Because the Third-Party Defendants did not catch the cancer diagnosis from the Pap smear slides, Quest concludes that "such injuries and damages were the direct, proximate and legal result of the negligence of the Third-Party Defendants and, thus, Quest Diagnostics is entitled to contribution from the Third-Party Defendants for [their] proportionate share of the fault." (*Id.* at ¶ 31).

Under Ohio law, joint and several liability arises when the negligence of two or more persons either combine or concur to produce a single indivisible injury. *Wery v. Seff*, 25 N.E.2d 692, 694 (Ohio 1940); *Schindler v. Standard Oil Co.*, 143 N.E.2d 133, 136 (Ohio 1957). A joint tortfeasor is "one who actively participates, cooperates in, requests, aids, encourages,

ratifies, or adopts a wrongdoer's actions in pursuance of a common plan or design to commit a tortious act." *Clevecon Inc. v. Northeast Ohio Regional Sewer Dist.*, 628 N.E.2d 143, 148 (Ohio Ct. App. 1993).

Quest's pleadings do not allege directly or inferably that it and the Third-Party Defendants acted together in any manner to produce Caitlin's injury. Nor does it describe an action "in pursuance of a common plan or design to commit a tortious act." Similar to the issue with indemnity, it appears Quest is alleging the Third-Party Defendants were negligent for two separate roles (Quest interpreted and reported the results of Caitlin's Pap smear and the Third-Party Defendants conducted the IUS Study, wherein they should have diagnosed the cancer). Therefore, Quest's third-party complaint does not state a facially plausible claim of joint and several liability.

### 3. Quest's Request for Leave to Amend its Complaint is Denied

Quest alternatively argues that the Court should grant it an opportunity to amend its third-party complaint. (Doc. 58 at 13, 14). The Third-Party Defendants do not contest this request in their reply. Nevertheless, Quest has not followed the proper procedure for submitting a motion to amend its complaint. *See Evan v Pearson Enter, Inc.*, 434 F.3d 839, 853 (6th Cir. 2006) ("Because [the plaintiff] failed to state her grounds for

amending with particularity in her first motion for leave, the district court did not abuse its discretion in denying Evans' request for leave to amend."). Quest also did not tender a proposed amended complaint for the Court to review. Therefore, if Quest wants the Court to consider such a request, it may submit a properly supported motion with a copy of the amended third-party complaint, no later than twenty-one days from the entry of this Memorandum Opinion and Order.

### III. CONCLUSION

Therefore, after considering the matter fully, and the Court being sufficiently advised,

**IT IS ORDERED** that:

(1) The Third-Party Defendants' motion to dismiss, Doc. 48, be, and is hereby, **GRANTED.** As indicated above, Dr. Thomas and Nurse Boerschig are hereby **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction;

(2) Quest shall submit any motion and amended complaint no later than twenty-one days from the entry of this Memorandum Opinion and Order.

This 25th day of September, 2020.



Signed By:

_**William O. Bertelsman**_  WOB

**United States District Judge**

16